IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO, CA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 08-0119 PJH |
| Plaintiff, | |
| vs. | |
| ARSENIO HUQUERIZA, | DECLARATION OF ICE SPECIAL AGENT RYAN HIRT |
| Defendant | |

I, Ryan Hirt, declare under penalty of perjury that the following is true and correct to the best of my knowledge and ability:

1. I am currently a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). I have been so employed since 2006. As an ICE Special Agent, I am responsible for investigating violations of federal criminal statutes, including those involving the sexual exploitation of children and material constituting child pornography. I have either participated in or have been the case agent of several child pornography investigations that have culminated to the level of probable cause for the issuance of search warrants. I have participated in the service of multiple such warrants, wherein ICE agents have been authorized by the District Court to enter into the residences of private individuals for the purpose of searching for and seizing evidence of child pornography.

2. In 2007, I was one of the case agents assigned to the matter of the United States v. Arsenio Huqueriza (CR-08-0119 PJH). The information contained in this declaration is known to me through a review of official reports, court documents, evidence seized, and through conversations with other ICE agents.

DECLARATION OF ICE SPECIAL AGENT RYAN HIRT - 1

3.	Through my investigation of Mr. Huqueriza, I learned that he was a retired San Francisco Police Officer who owned a Smith and Wesson Model 19, .357 revolver. Due to the fact that he was a former law enforcement officer, I believed that Mr. Huqueriza was familiar with police tactics, procedures, and had received weapons training during his career. Based on this information, combined with the embarrassing nature of child pornography investigations, I concluded that when we served the search warrant on his residence, Mr. Huqueriza potentially posed a significant risk to officer safety.

4.	On August 10, 2007, I and other ICE agents, assisted by two officers from the South San Francisco Police Department, served a federal search warrant for child pornography at the residence of Mr. Huqueriza in South San Francisco, California. In an effort to minimize the risk to officer safety during the service of the search warrant, ICE Agent Brodie Allyn requested that the police officers use a ruse to make initial contact with Mr. Huqueriza.

5.	At approximately 0813 am, I and the other ICE agents parked and exited our vehicles down the street from Mr. Huqueriza's residence. We approached his residence in a manner that concealed us from view from the first level of the residence. We stopped in a single file formation in front of the garage door and approximately six feet from the entryway to the front door of the residence. In this position, we were not in view of the front door. The front door is recessed from the entryway.

6.	As we got in the position described above, the two uniformed South San Francisco Police Officers, driving a marked police car, parked and approached the residence from the opposite direction. The officers knocked on the front door of the residence at approximately 8:15 am. Mr. Huqueriza answered the door, and one of the officers asked him if he would come outside to discuss a reported traffic accident involving Mr. Huqueriza's red Dodge truck. Mr. Huqueriza cooperated with the officers and took several steps out of the threshold. Once we (the ICE agents) were in clear view of Mr. Huqueriza, we identified ourselves as federal agents and told him we were serving a search warrant on his residence. We advised Mr. Huqueriza that he was not under arrest but that we needed to detain him while his residence was secured. For officer safety reasons, Mr. Huqueriza was handcuffed and placed in the back of the police car for approximately 15 minutes. The South San Francisco police officers accompanied him during that time.

DECLARATION OF ICE SPECIAL AGENT RYAN HIRT - 2

7.  While Mr. Huqueriza was inside the police car, ICE agents entered the residence, announcing "Police with a search warrant" as they did so.

8.  As ICE agents encountered Mr. Huqueriza's family members inside the house, the family members were guided to the family room, which is located on the second level of the house, immediately at the top of the stairs. Family members were not handcuffed, but were asked to remain in that area while agents conducted a protective sweep of the residence.

9.  Once the residence was secured, ICE agents brought Mr. Huqueriza back into the downstairs of the residence, separate from his family members to afford him a greater degree of privacy. I removed the handcuffs and again advised Mr. Huqueriza that we were there to serve a search warrant. I advised him that the search warrant was for child pornography. I again told Mr. Huqueriza that he was not under arrest and that he was free to leave at any time. I asked Mr. Huqueriza if he was willing to speak with me about why we were there and Mr. Huqueriza declined to do so. Mr. Huqueriza was shown a copy of the search warrant and Attachments A, B, and C, which described the place to be searched, detailed the items to be seized as part of the warrant, and provided the Northern District of California computer search protocol. As is our practice and procedure for all search warrants that we execute, we did not provide Mr. Huqueriza with a copy of the probable cause affidavit supporting the warrant.

10. During the time Mr. Huqueriza was in the residence and I was speaking with him downstairs, one of the other ICE agents took photographs of each room in the residence. Once the photographs had been taken, agents began searching the rooms for evidence related to child pornography.

11. In the family room, Mr. Huqueriza's wife, adult son and daughter were advised that we were serving a search warrant and that they could leave at any time. Family members indicated they did not wish to leave, so agents asked them to remain in the upstairs family room. Mrs. Huqueriza asked to wash her face and retrieve additional clothing and was allowed to do so by agents. The son and daughter also asked to brush their teeth, and were also allowed to do so. Whenever one of these requests was made, an agent of the same sex as the requester would accompany the family member.

12. During the on-scene investigation and while in the upstairs family room, Mr. Huqueriza's adult son and daughter freely conversed with agents about their future career interests, current college classes, and other issues

DECLARATION OF ICE SPECIAL AGENT RYAN HIRT - 3

1  unrelated to the search warrant. At one point, one of the agents retrieved a box of donuts from the kitchen and
2  brought it to the family members. As the search of the residence continued, the family members asked if they could
3  move from the upstairs area to the downstairs living room. At that time, the family was escorted to the living room,
4  where they joined Mr. Huqueriza.

5  13.    The on-scene investigation and search of the residence was completed at approximately 10:45am. It should
6  be noted that multiple handguns were found in the residence, but none were seized. A full list of items seized by
7  agents was annotated on a property form and given to Mr. Huqueriza along with a copy of the search warrant and
8  Attachments A, B, and C.

9  14.    Subsequent forensic analysis of the evidence seized from Mr. Huqueriza's residence revealed hundreds of
10 images and video clips containing child pornography.

12 Date: June 4, 2008
13 Ryan Hirt, Special Agent
   Immigration and Customs Enforcement
14 San Francisco, CA

DECLARATION OF ICE SPECIAL AGENT RYAN HIRT - 4